UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIAM E. HAMMONS,

    Plaintiff,

    v.

WELLS FARGO BANK, N.A., et al.,

    Defendants.

Case No. 15-cv-04897-RS

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

**I. INTRODUCTION**

In this action, plaintiff William E. Hammons raises a host of state law violations arising out of the foreclosure sale of his property.  Hammons maintains the parties who executed the foreclosure—defendants Wells Fargo Bank, N.A. ("Wells Fargo") and NDeX West, LLC ("NDeX")—lacked standing to enforce the power of sale clause in his deed of trust.   Hammons insists an investigation revealed his loan was improperly securitized, thereby breaking the chain of title and simultaneously rendering the present beneficiary unknown.  Defendants respond this action must be dismissed for failure to join Hammons' co-signor, and also maintain the securitization theory is legally and factually meritless.

For the reasons explained below, Wells Fargo's motion to dismiss will be granted in its entirety, but with leave to amend.  Any amended complaint may not re-allege claims based on flaws in the securitization process or any alleged improper assignment of the note or deed of trust.  Additionally, should Hammons elect to amend his pleading, he must include co-signor Gwendolyn M. Bridges as a party to this action.

## II. FACTUAL BACKGROUND[1]

On or around October 6, 2006, Plaintiff William E. Hammons, along with Gwendolyn M. Bridges, entered into a "Pick-A-Payment" ("PAP") loan agreement with World Savings Bank, FSB ("World Savings"). The loan was memorialized in a promissory note, secured by a deed of trust, and afforded the borrowers $420,000 for a property located in Oakland, California. About one year later, World Savings changed its name to Wachovia Mortgage, FSB, and two years after the name change, Wachovia was acquired by Wells Fargo.[2]

In mid to late 2009, around the time of that acquisition, Hammons began having trouble making his loan payments. That led defendant NDeX—the substitute trustee appointed by Wells Fargo[3]—to record a notice of default in early 2010. Hammons apparently was unable to cure the delinquent amount, and on October 13, 2014, Wells Fargo recorded a notice of sale. The property sold at a public auction on July 6, 2015.

Two months thereafter, Hammons commenced this action in the Superior Court for Alameda County. Hammons maintains Wells Fargo lacked the authority to foreclose because it was not the present beneficiary of his loan. Specifically, Hammons avers he commissioned a "third party forensic mortgage securitization audit and analysis" revealing that World Savings sold

---

[1] The factual background is based on the averments in the complaint, which must be taken as true for purposes of a motion to dismiss. This section also draws on certain records of which the Court takes judicial notice, as discussed below.

[2] Wachovia Mortgage, FSB was converted to Wells Fargo Bank Southwest, N.A., which then became a division of Wells Fargo Bank, N.A. *See* Request for Judicial Notice ("RJN") Exs. A–E.

[3] The trustee that appears on the deed of trust is Golden West Savings Association Service Company ("Golden West Savings"). Golden West Financial Corporation—the parent company of Golden West Savings and World Savings Bank, FSB—merged with Wachovia Corporation in 2006. Two years later, Wells Fargo acquired both Wachovia Corporation and its subsidiary Wachovia Mortgage, making Wells Fargo the beneficiary under the deed of trust. Wells Fargo then recorded a "Substitution of Trustee" on June 15, 2010, installing NDeX West, LLC. The substitution of trustee names the present beneficiary: "Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. F/K/A Wachovia Mortgage FSB F/K/A World Savings Bank, FSB." *See* Compl. Ex. E. This arrangement follows from the original deed of trust, where the beneficiary was identified as "World Savings Bank, FSB, *its successors* and/or assignees." Compl. Ex. A (emphasis added).

his loan "to the secondary market for securitization into a mortgage-backed securities trust." Compl. ¶ 12. According to Hammons, the pooling and servicing agreement governing that trust obligated World Savings to assign and transfer his loan to the trustee of the trust. World Savings apparently failed to comply with those procedures, leading Hammons to conclude there was an "irreversible break in the chain of title—with the successor lender and present beneficiary unassigned, undocumented and unknown to date." Compl. ¶ 17. Hammons contends the loan was "then paid off in full by a credit default swap," Compl. ¶ 24, a puzzling allegation given Hammons' concession he "was not notified by [any relevant financial institution] that his loan had been paid in full." Compl. ¶ 25. The upshot of these events, as best as can be deciphered from Hammons' complaint, is that the loan did not belong to World Savings when the corporation was acquired by Wells Fargo. Thus, Hammons contends Wells Fargo lacked authority to record the "Substitution of Trustee," the notice of default, and the four notices electing to proceed with a trustee's sale.

All told, Hammons avers he has never seen evidence showing his loan was ever transferred from World Savings. He raises a host of complaints arising out of the alleged illegality of the foreclosure proceedings, including claims for: (1) wrongful foreclosure; (2) quiet title; (3) slander of title; (4) fraud; (5) cancellation of instruments; (6) violation of Cal. Civ. Code § 2934(a)(1)(A); (7) violation of Cal. Civ. Code § 2923.5; (8) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (9) unjust enrichment. Hammons seeks permanently to enjoin the defendants from pursuing foreclosure activity, and also requests, among other things, various damages. Defendants removed this case to federal court on October 23, 2015.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard asks for "more than a sheer possibility that a defendant acted unlawfully."  *Id.*  The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense."  *Id*. at 679.

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong."  *Vess v. Ciba–Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party.  *Twombly*, 550 U.S. at 570.  "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim."  *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

# IV. DISCUSSION

## A. Threshold Issues

### 1. Subject Matter Jurisdiction

As a threshold matter, Hammons asserts removal was improper due to a defect in subject matter jurisdiction. A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Removal is therefore proper where a case presents a federal question or involves diversity of citizenship and meets the statutory amount in controversy. *See* 28 U.S.C. §§ 1331, 1332.

Wells Fargo removed this case on the basis of diversity jurisdiction, claiming it hales from the state of South Dakota and Hammons from California. Hammons challenges only Wells Fargo's assertion that it is a citizen of South Dakota.[4] Hammons notes "Wells Fargo, N.A.," "Wells Fargo, National Association," and "Wells Fargo Home Mortgage, Inc." do not appear in South Dakota's business database, or are listed as inactive.

Hammons' argument is meritless. None of the entities he highlights are a defendant in this action. Further, the exhibit he attaches from the California Secretary of State's office identifies "Wells Fargo Bank, N.A" as a citizen of South Dakota. Finally, not only has Wells Fargo demonstrated its main office is in South Dakota, *see* Not. of Removal Ex. F; *Rouse v. Wachovia Mortgage, FSB*, 747 F.3d 707, 715 (9th Cir. 2014) ("[A] national banking association is a citizen only of the state in which its main office is located."), but the Ninth Circuit recently has held "Wells Fargo is a citizen only of South Dakota." *Id.* Jurisdiction is therefore proper in this case.

### 2. Incorporation by Reference and Judicial Notice

When resolving a motion to dismiss for failure to state a claim, review is generally limited

---

[4] Hammons does not deny the amount-in-controversy requirement is met, and it well appears to be so. Hammons seeks an injunction permanently enjoining Wells Fargo from enforcing its rights under the $420,000 loan and deed of trust. "[W]here a complaint seeks to invalidate a loan secured by a deed of trust, the amount in controversy is the loan amount." *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010).

to the four corners of the complaint. *Allarcom Pay Television. Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). The court may, however, look to exhibits attached to the complaint, *see Hal Roach Studios. Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents incorporated by reference into the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Documents upon whose contents the complaint necessarily relies—even if the complaint does not explicitly allege their contents—and whose authenticity and relevance are uncontested, are considered incorporated by reference. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005). The court may, in addition, take into account material that is properly the subject of judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Judicial notice may be taken of a fact not subject to reasonable dispute because it either is generally known within the trial court's territorial jurisdiction, or readily can be determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Here, Hammons attached nine documents to the complaint: the Deed of Trust dated October 6, 2006; Golden West Financial's Form 10-Q for the quarterly period ending June 30, 2006; Wachovia's Form 10-Q for the quarterly period ending December 31, 2007; a Notice of Default and Election to Sell Under Deed of Trust dated May 5, 2010; a Substitution of Trustee form dated June 3, 2010; a Notice of Trustee's Sale dated August 7, 2010; a Notice of Trustee's Sale dated September 20, 2011; a Notice of Trustee's Sale dated April 22, 2013; and a Notice of Trustee's Sale dated October 9, 2014. These materials properly may be considered to resolve the motion to dismiss because they were submitted as part of the complaint.

Wells Fargo requests notice be taken of ten documents: (1) a Certificate of Corporate Existence dated April 21, 2006, issued by the Office of Thrift Supervision ("OTS"), certifying that World Savings Bank, FSB is a federal savings bank; (2) a letter dated November 19, 2007, on the letterhead of the OTS authorizing a name change from World Savings, Bank, FSB to Wachovia Mortgage, FSB; (3) the charter of Wachovia Mortgage, FSB, effective December 31, 2007, and signed by the Director of the OTS, reflecting that Wachovia is subject to the Home Owner's Loan

Act ("HOLA") and the OTS; (4) official Certification of the Comptroller of the Currency stating that effective November 1, 2009, Wachovia Mortgage, FSB, converted to Wells Fargo Bank Southwest, N.A., which then merged with Wells Fargo Bank, N.A.; (5) a printout from the website of the Federal Deposit Insurance Corporation dated December 15, 2010, showing the history of Wachovia Mortgage, FSB; (6) the Deed of Trust dated October 6, 2006, and recorded in the Alameda County Recorder's Office; (7) Hammons' adjustable rate mortgage note, dated October 6, 2006, signed by Hammons; (8) a Notice of Default and Election to Sell under Deed of Trust dated May 5, 2010, and recorded on May 6, 2010, in the official records of the Alameda County Recorder's Office; (9) a Notice of Trustee's Sale dated October 9, 2014, and recorded on October 13, 2014, in the Alameda County Recorder's Office; and (10) a trustee's deed upon sale dated July 23, 2015, and recorded on July 27, 2015, in the Alameda County Recorder's Office.

Wells Fargo argues the first five documents properly are the subject of notice because they reflect official acts of the legislative and executive departments or were taken from governmental websites. Wells Fargo submits the mortgage note is incorporated by reference, and notice can be taken of the remaining documents because they are copies of official records. Hammons did not offer any opposition to Wells Fargo's request.

Because notice may be taken of documents reflecting official acts of the executive branch, *see* Fed. R. Civ. P. 201(d), and information obtained from government websites, *see, e.g. Paralyzed Veterans of Am. v. McPherson*, No. C 06–4670 SBA, 2008 WL 4183981, at *17–18 (N.D. Cal. Sept. 9, 2008) (collecting cases), Wells Fargo's request for notice is granted with respect to the first five documents. The mortgage note indeed is incorporated by reference into the complaint. *See, e.g.* Compl. ¶ 5. The request will be granted with respect to the remaining documents because they are copies of public records. *See Kennedy v. World Savings bank, FSB*, No. 14–cv–05516–JSC, 2015 WL 1814634, at *5 (N.D. Cal. Apr. 21, 2015) ("[C]ourts in this District regularly take judicial notice of similar documents relating to real property that are publicly recorded in county recorder's offices.").

**B. Hammons' Claims**

**1. Securitization Agreement**

All nine of Hammons' claims are born of the allegation that a defect in securitization ruptured the chain of title such that Wells Fargo was not the beneficiary of Hammons' loan and had no authority to enforce the power of sale clause in the deed of trust. Hammons' argument lacks the legal and factual support he needs to avoid dismissal of his claims for relief.[5]

First, to the extent Hammons seeks to enforce the terms of the alleged securitization agreement, he lacks standing. As courts in California repeatedly have recognized, "even if [an] asserted improper securitization (or any other invalid assignments or transfers of the promissory note subsequent to [its execution]) occurred," as Hammons avers here, "the relevant parties to such a transaction were the holders (transferors) of the third party note and the third party acquirers (transferees) of the note." *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 514–15 (2013). "As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note," borrowers "lack[] standing to enforce any agreements, including [an] investment trust's pooling and servicing agreement, relating to such transactions." *Id.* at 515. *See also Hunt v. U.S. Bank N.A.*, 593 Fed. App'x 730, 732 (9th Cir. 2015) (noting even if "improper securitization occurred or the assignments were fraudulent," the borrowers lack standing because they "are not a party to those transactions and are not the victims").

Recognizing as much, Hammons contends he points to defects in securitization only "as evidence that the foreclosing party does not have standing." Compl. ¶ 51. That argument is no more tempting, however, because it nevertheless maintains Wells Fargo was stripped of authority by virtue of the faulty securitization. Relying on *Jenkins*, and contrary to Hammons' basic

---

[5] As discussed below, dismissal is also appropriate under Rule 12(b)(7) for failure to join an indispensable party. As "[j]oinder is not itself jurisdictional," however, it is prudent to address Hammons' claims because they independently warrant dismissal at this juncture. *Alto v. Black*, 738 F.3d 1111, 1125 (9th Cir. 2013).

1  argument in this case, courts in this district consistently have concluded "debtors may not pursue
2  judicial challenges to the authority of a foreclosing beneficiary based on an improper
3  securitization theory." *Kennedy v. World Savings bank, FSB*, No. 14–cv–05516–JSC, 2015 WL
4  1814634, at *6–7 (N.D. Cal. Apr. 21, 2015). *See, e.g.*, *Moran v. HSBC Bank*, No. 14–CV–00633–
5  LHK, 2015 WL 139705, at *5 (N.D. Cal. Jan. 9, 2015); *Dang v. Residential Credit Sols., Inc.*, No.
6  C–14–02587–RMW, 2014 WL 5513754, at *5 (N.D. Cal. Oct. 31, 2014); *Ordono v. U.S. Bank*
7  *Nat. Ass'n, et al.*, No. 14–cv–00774–JD, 2014 WL 3610952, at *3 (N.D. Cal. July 21, 2014);
8  *Gieseke v. Bank of Am.*, No. 13–cv–04772–JST, 2014 WL 718463, at *6 (N.D. Cal. Feb. 23,
9  2014); *Zapata v. Wells Fargo Bank, N.A.*, No. C 13–04288 WHA, 2013 WL 6491377, at *2–3
10 (N.D. Cal. Dec. 10, 2013).

11 *Dahnken v. Wells Fargo Bank, N.A.*, No. C 13–2838 PJH, 2013 WL 5979356, at *2 (N.D.
12 Cal. Nov. 8, 2013) is instructive. There, like here, the plaintiff maintained "his loan was
13 improperly securitized, thus breaking the chain of title to his mortgage, and leaving defendants
14 without standing to enforce his mortgage." *Id.* at *2. The plaintiff further insisted, as Hammons
15 does here, "the true and valid beneficiary is unknown." *Id.* The court nevertheless held the plaintiff
16 lacked "standing to challenge the securitization of his loan," and granted defendants' motion to
17 dismiss the complaint in its entirety. *Id.*

18 Retreating further, Hammons next insists it is best to buck *Jenkins* and instead rely on
19 *Glaski v. Bank of America, N.A.*, 218 Cal. App. 4th 1079 (2013). There, the California Court of
20 Appeal held a plaintiff can challenge the securitization of his loan if the defect asserted would void
21 the alleged assignment. *Id.* at 1095. Hammons' complaint, as best as can be deciphered, appears
22 to latch on to this theory, as he claims faulty securitization rendered the present beneficiary of his
23 loan unknown.[6] Importantly, "[e]very court in this district that has evaluated *Glaski* has found it is

---

[6] The basis for this assertion is Hammons' "forensic mortgage securitization audit," but in light of the documents he attaches to the complaint, it is doubtful the inference he urges is warranted. The substitution of trustee names the present beneficiary: "Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. F/K/A Wachovia Mortgage FSB F/K/A World Savings Bank, FSB." *See* Compl. Ex. E. Similarly, the notice of default, identifies World Savings as the original beneficiary, then directs Hammons to contact "Wells Fargo Bank, N.A., A/K/A

unpersuasive and not binding authority." *Zapata*, 2013 WL 6491377 at \*2 (collecting cases). Hammons' suggestion to substitute *Glaski* for *Jenkins* will not be adopted.

Lastly, Hammons argues Wells Fargo lacked the ability to foreclose simply because he has never seen evidence showing his loan was transferred from World Savings.[7] Even assuming that is true, the deed of trust—which Hammons attached to his complaint—establishes as a factual matter that his argument lacks merit. The deed of trust identifies "World Savings Bank, FSB, *its successors* and/or assignees" as the lender and beneficiary. *See* Compl. Ex. A (emphasis added). The note similarly identifies "World Savings Bank, FSB, a federal savings bank, *its successors and/or assignees, or anyone to whom this Note is transferred*" as the lender. *See* RJN Ex. G (emphasis added). Wells Fargo is the successor-in-interest to World Savings. *See* RJN Ex. A–E. Thus, even accepting Hammons' theory, Wells Fargo would possess the contractual right to enforce the note and deed of trust.

Hammons' securitization theory is not viable under *Jenkins*, yet it lies at the heart of his claims for wrongful foreclosure, *see* Compl. ¶¶ 59–60, quiet title, *see* Compl. ¶ 78, slander of title, *see* Compl. ¶ 80, fraud, *see* Compl. ¶ 86, cancellation of instruments, *see* Compl. ¶¶ 97–98, violation of Civil Code § 2934a(a)(1)(A), *see* Compl. ¶¶ 103–04, violation of Civil Code § 2923.5, *see* Compl. ¶¶ 107–08, unfair competition, *see* Compl. ¶ 112, and unjust enrichment, *see* Compl. ¶¶ 118–20. Wells Fargo's motion to dismiss will therefore be granted in its entirety, but with leave to amend. *See, e.g.*, *Ordono*, 2014 WL 3610952 at \*3 (dismissing with leave to amend because "all eleven of plaintiff's causes of action appear to depend on plaintiff's attacks to the securitization process"); *Dahnken v. Wells Fargo Bank, N.A.*, No. C 13–2838 PJH, 2013 WL

---

Wachovia Mortgage, a Division of Wells Fargo Bank, N.A. and F/K/A Wachovia Mortgage, FSB" to find out the amount he must pay or arrange for payment to stop the foreclosure. *See* RJN Ex. H. Hammons responds the notice "suggests, but does not particularly state" whether Wells Fargo is the present beneficiary. Compl. ¶ 26(a).

[7] For instance, Hammons avers he "has never been provided with any evidence that the full and unencumbered interest in his mortgage loan was ever transferred from the original lender World Savings to Wachovia Mortgage, Wells Fargo, or to any person or entity." Compl. ¶ 25.

5979356, at *2 (N.D. Cal. Nov. 8, 2013) (dismissing with leave to amend because "all ten of plaintiff's asserted causes of action are based on the argument that his loan was improperly securitized, thus breaking the chain of title to his mortgage, and leaving defendants without standing to enforce his mortgage"). Any amended complaint may not re-allege claims based on flaws in the securitization process.

### 2. Failure to Join an Indispensable Party

Wells Fargo also asserts dismissal is required under Rule 12(b)(7) for failure to join an indispensable party. Failure to join a party deemed "indispensable" under Rule 19 provides a basis for dismissal. Fed. R. Civ. P. 12(b)(7); *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1459, 1458 (9th Cir. 1994). The requisite analysis under Rule 19 proceeds in three stages. *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010) ("*Peabody II*"). First, a party "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction" is "necessary" to the maintenance of the action if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a); *Peabody II*, 610 F.3d at 1078, *Quileute*, 18 F.3d at 1458. In other words, a nonparty is "necessary" if joinder is "desirable in the interests of just adjudication." *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) ("*Peabody I*") (quoting Fed. R. Civ. P. 19 Advisory Committee Note (1966)). To perform this analysis, the Court "must determine whether the absent party has a *legally protected interest* in the suit," and if so, whether "that interest will be impaired or impeded by the suit." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (emphasis in original). "'There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a) . . . . The determination is heavily influenced by the facts and circumstances of each case.'" *Peabody II*, 610 F.3d at 1081 (quoting *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986)).

If a party is deemed "necessary" under Rule 19(a), the second question is whether joinder is feasible. Joinder may be unavailable if, for instance, venue is improper, the Court lacks

personal jurisdiction over the party, or joinder would destroy subject matter jurisdiction.  *Peabody I*, 400 F.3d at 779.

Third and finally, if joinder is not feasible, the Court must determine whether the party is "indispensable" under Rule 19(b), that is, whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  To make that determination, the Court is to consider: "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided . . . ; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."  Fed. R. Civ. P. 19(b); *Peabody II*, 610 F.3d at 1078 (an "indispensable party" is "one who not only has an interest in the controversy, but has an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.").

In order to determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside of the pleadings.  *See McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).  The party moving for dismissal under Rule 12(b)(7) "bear[s] the burden in producing evidence in support of the motion."  *See Biagro Western Sales, Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1141 (E.D. Cal. 2001) (citing *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994)).

Here, Wells Fargo asserts co-borrower Gwendolyn M. Bridges is an indispensable party.  Bridges signed the deed of trust alongside Hammons, thereby pledging her interest in the property as security for the loan.  Hammons did not join Bridges as a party to this action, yet as Wells Fargo points out, seeks damages stemming from alleged injuries to their common title.  Wells Fargo insists the loan agreement cannot be cancelled without Bridges' consent, and argues her absence creates a significant risk of multiple litigation.  Hammons does not offer any argument in response, and indeed fails to join issue on this subject entirely.

Bridges is a "necessary" party to this action, and the complaint must therefore be dismissed under Rule 12(b)(7). Hammons requests an order cancelling the deed of trust, declaring he *and Bridges* the rightful title holders, re-conveying the property in their favor, and awarding him, but not Bridges, damages. It appears that complete relief cannot be afforded in this proceeding because Bridges' consent is required to cancel the deed of trust, yet Hammons' action makes no allowance for her views.

Bridges' absence also impedes her ability to protect her interests. As a signatory to the deed, she may not agree with Hammons' strategy regarding the disposition of the property, and could be prejudiced in subsequent litigation by the adjudication of this action. As a co-borrower, Bridges would also presumably be entitled to share a portion of any damages awarded in this proceeding.

Lastly, Bridges' absence creates a significant risk of repeated litigation. Regardless of the outcome of this suit, Bridges could assert the same claims in subsequent proceedings because she is a signatory to the precise contract at issue in this case. *See Va. Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243 (9th Cir. 1998) ("[I]n an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.").

In sum, Bridges harbors a legally-protected interest integral to these proceedings. Her absence not only stymies the possibility of affording complete relief, but impedes her ability to protect her interests and puts Wells Fargo at risk of incurring multiple obligations.[8] Joinder here is "desirable in the interests of just adjudication." *Peabody I*, 400 F.3d at 779.

Turning to step two, Hammons offers no argument why joinder would not be feasible, as required by Rule 19(c). In these circumstances, dismissal under Rule 12(b)(7) is appropriate. *See Bickoff v. Wells Fargo Bank, N.A.*, No. 11–CV–02452 BEN (WVG), 2012 WL 3637381, at *3–4 (S.D. Cal. Aug. 20, 2012). Wells Fargo's motion to dismiss will be granted with leave to amend. Hammons is ordered to join Gwendolyn M. Bridges as a party if he opts to amend.

---

[8] There is no indication she cannot be served or that her joinder would defeat jurisdiction.

## V. CONCLUSION

Wells Fargo's motion to dismiss will be granted in its entirety with leave to amend. Any amended complaint may not re-allege claims based on flaws in the securitization process or any alleged improper assignment of the note or deed of trust. Any amended complaint also must include Gwendolyn M. Bridges as a party to this action. Any new claims should be presented as clearly and concisely as possible. Should Hammons elect to amend his pleading, he must lodge an amended complaint within thirty (30) days from the date of this order.

**IT IS SO ORDERED**.

Dated: December 18, 2015

RICHARD SEEBORG
United States District Judge